Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
08/11/2017 09:08 AM CDT

- 712 -

Nebraska Supreme Court Advance Sheets
296 Nebraska Reports
JANICE M. HINRICHSEN, INC. v. MESSERSMITH VENTURES
Cite as 296 Neb. 712

Janice M. Hinrichsen, Inc., a Nebraska corporation,
appellant and cross-appellee, v. Messersmith
Ventures, L.L.C., a Nebraska limited liability
company, appellee and cross-appellant, and
Risk Assessment and Management, Inc.,
a Nebraska corporation, appellee.

___ N.W.2d ___

Filed May 19, 2017.    No. S-16-086.

1. **Conveyances: Fraud: Equity.** An action under the Uniform Fraudulent
   Transfer Act is equitable in nature.
2. **Conveyances: Fraud: Equity: Appeal and Error.** An appeal of a dis-
   trict court's determination that transfers of assets were in violation of the
   Uniform Fraudulent Transfer Act is equitable in nature.
3. **Equity: Appeal and Error.** In an appeal of an equity action, an appel-
   late court tries factual questions de novo on the record, reaching a con-
   clusion independent of the findings of the trial court, provided, however,
   that where credible evidence is in conflict on a material issue of fact, the
   appellate court considers and may give weight to the fact that the trial
   judge heard and observed the witnesses and accepted one version of the
   facts rather than another.

Appeal from the District Court for Buffalo County: John
P. Icenogle, Judge. Affirmed in part, and in part reversed and
remanded with directions.

Larry W. Beucke, of Parker, Grossart, Bahensky, Beucke,
Bowman & Symington, L.L.P., for appellant.

Bradley D. Holbrook and Nicholas R. Norton, of Jacobsen,
Orr, Lindstrom & Holbrook, P.C., L.L.O., for appellee
Messersmith Ventures, L.L.C.

- 713 -

Nebraska Supreme Court Advance Sheets
296 Nebraska Reports
JANICE M. HINRICHSEN, INC. v. MESSERSMITH VENTURES
Cite as 296 Neb. 712

Heavican, C.J., Wright, Miller-Lerman, Cassel, Stacy, Kelch, and Funke, JJ.

Miller-Lerman, J.

## NATURE OF CASE

In this action brought under the Uniform Fraudulent Transfer Act, Neb. Rev. Stat. §§ 36-701 to 36-712 (Reissue 2016) (UFTA), Janice M. Hinrichsen, Inc. (JMH), alleged that Risk Assessment and Management, Inc. (RAM), against whom JMH had a judgment from a previous action, had fraudulently transferred certain assets to Messersmith Ventures, L.L.C. The district court for Buffalo County entered judgment in favor of JMH in the amount of $250. JMH appeals, and Messersmith Ventures cross-appeals.

We conclude that the district court did not err when it implicitly found that a fraudulent transfer of assets had occurred. However, we further conclude that the judgment in the amount of $250 was not the appropriate relief. Instead, the appropriate relief afforded under the UFTA in this case is for the court to enter an order that would allow JMH's previous judgment against RAM to be satisfied by authorizing JMH to levy execution on the assets or the proceeds of the assets that RAM transferred to Messersmith Ventures. We therefore affirm the judgment of the district court to the extent it found that there was a fraudulent transfer, but we reverse the order to the extent it awarded JMH a monetary judgment of $250. We remand the cause with directions to the district court to order the appropriate relief.

## STATEMENT OF FACTS

Janice M. Hinrichsen purchased an insurance agency in Elm Creek, Nebraska, in 1999. She incorporated the business in 2000 as JMH and operated it under the name "Platte Valley Insurance Agency." In January 2011, JMH sold 90 percent of its assets to RAM; Chad Messersmith is the sole shareholder of RAM. Pursuant to the purchase agreement, RAM was to pay JMH $108,870 over a period of time. JMH and RAM

- 714 -

Nebraska Supreme Court Advance Sheets
296 Nebraska Reports
JANICE M. HINRICHSEN, INC. v. MESSERSMITH VENTURES
Cite as 296 Neb. 712

formed PVIA Partnership and operated the insurance agency through the partnership. RAM held a 90-percent interest in the partnership, and JMH held a 10-percent interest.

In late 2011, RAM failed to make a required payment under the purchase agreement. JMH thereafter left the partnership and filed an action against RAM to enforce the purchase agreement. In the amended complaint, this earlier case was referred to as "Case No. C112-88." In July 2012, the district court for Buffalo County entered a judgment in favor of JMH and against RAM in the amount of $98,606.94. In its answer in the instant case, Messersmith Ventures admits the existence of this judgment.

In October 2013, Messersmith created Messersmith Ventures to operate a business under the name "Mid-States Insurance Agency." On October 28, RAM, as managing partner of PVIA Partnership, transferred to Messersmith Ventures the customer list of PVIA Partnership for the amount of $250. The primary agency contracts of PVIA Partnership were subsequently renewed in the name of Messersmith Ventures. In November, RAM notified JMH that RAM was withdrawing as a partner of PVIA Partnership, and RAM filed paperwork with the Nebraska Secretary of State indicating that PVIA Partnership was dissolved effective October 31, 2013.

In February 2014, JMH filed the present action against Messersmith Ventures in the district court. JMH alleged in its complaint that RAM's transfer of PVIA Partnership assets to Messersmith Ventures was a fraudulent transfer. JMH alleged various reasons the transfer was fraudulent, including (1) the transfer was made with the actual intent to hinder, delay, or defraud; (2) the transfer was made without receiving a reasonably equivalent value, and RAM was engaged, or was about to engage, in a business or transaction for which its remaining assets were unreasonably small in relation to the business or transaction; (3) the transfer was made without receiving a reasonably equivalent value in exchange for the transfer, and RAM was insolvent at the time or became insolvent as a

- 715 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
296 NEBRASKA REPORTS
JANICE M. HINRICHSEN, INC. v. MESSERSMITH VENTURES
Cite as 296 Neb. 712

result of the transfer; (4) the transfer was made to an insider for an antecedent debt, the debtor was insolvent at the time, and the insider knew or reasonably should have known the debtor was insolvent. These allegations generally tracked the language of provisions of the UFTA. JMH requested an order avoiding the transfer to allow the assets to be used to satisfy JMH's judgment against RAM and an order allowing JMH "to levy execution on the assets of Messersmith Ventures and [its] proceeds" in accordance with § 36-708(b) of the UFTA. JMH also requested "further relief as the Court deems just and equitable." JMH amended its complaint, and, inter alia, added RAM as a defendant and added a request for "a charging order charging the assets of Messersmith Ventures."

After a bench trial, the district court filed an order ruling on the action. After reviewing the evidence and JMH's allegations, the court stated, inter alia, that "the only assets considered valuable by [JMH] transferred by RAM would be the customer list and the agency contracts." The court concluded its order with the following paragraphs:

> Nebraska law provides that if the court determines that a transfer is voidable the creditor may recover judgment for the value of the asset transferred as adjusted, or the amount necessary to satisfy the creditor's claim, whichever is less. [Messersmith Ventures] at most acknowledges that the assets transferred were valued at $250.00. [JMH] obviously believes that the assets were valued at a substantially greater amount. It is the burden of [JMH], however, to establish the amount and value of the transferred assets. The court finds that [JMH] did not offer adequate and sufficient evidence to establish the value of the assets transferred at the time of the transfer. The court will therefore rely upon the testimony of [Messersmith Ventures] and enter judgment in favor of [JMH] and against [Messersmith Ventures] in the amount of $250.00. Interest will accrue from today's date at 2.137% per annum.

The remaining issue is the request of [JMH] to levy an execution on the assets of [Messersmith Ventures] to satisfy [JMH's] judgment against RAM. Nebraska law provides that if a creditor has obtained a judgment on a claim against the debtor, the creditor, if the court so orders, may levy execution on the asset transferred or its proceeds. The court again finds that the value of the asset transferred is $250.00 and [JMH] may levy execution against [Messersmith Ventures] to partially satisfy the debt of the transferor to [JMH]. The court, however, finds that there is not sufficient evidence as to the amount of proceeds received by [Messersmith Ventures] from the transferred assets, and the court therefore limits the execution to the amount set forth above.

JMH subsequently filed a motion for new trial, which the district court denied.

JMH appeals, and Messersmith Ventures cross-appeals.

ASSIGNMENTS OF ERROR

In its appeal, JMH claims, restated, that the district court erred when it (1) failed to specifically find that the transfer of assets from RAM to Messersmith Ventures was a fraudulent transfer and (2) awarded a monetary judgment in the amount of $250 rather than, inter alia, the requested relief of permitting JMH to levy execution on all assets of Messersmith Ventures and their proceeds in accordance with § 36-708(b) or "a charging order" on the assets of Messersmith Ventures.

In its cross-appeal, Messersmith Ventures claims that the district court erred when it awarded relief to JMH, because no fraudulent transfer occurred. Messersmith Ventures contends that, in any event, there was no evidence the assets were worth anything more than the $250 that Messersmith Ventures paid to RAM.

STANDARDS OF REVIEW

[1-3] An action under the UFTA is equitable in nature, *Reed v. Reed*, 277 Neb. 391, 763 N.W.2d 686 (2009), and an appeal

- 717 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
296 NEBRASKA REPORTS
JANICE M. HINRICHSEN, INC. v. MESSERSMITH VENTURES
Cite as 296 Neb. 712

of a district court's determination that transfers of assets were in violation of the UFTA is equitable in nature. *Eli's, Inc. v. Lemen*, 256 Neb. 515, 591 N.W.2d 543 (1999). In an appeal of an equity action, an appellate court tries factual questions de novo on the record, reaching a conclusion independent of the findings of the trial court, provided, however, that where credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Id*.

## ANALYSIS

In its appeal, JMH assigns error both to the district court's failure to explicitly find that the transfer of assets from RAM to Messersmith Ventures was a fraudulent transfer and to the form of relief that the district court ordered. In its cross-appeal, Messersmith Ventures contends that no relief should have been given, because no fraudulent transfer occurred. It argues in the alternative that, if an award is warranted, the district court's award of $250 in monetary damages was correct. In view of the foregoing arguments, both parties raise issues regarding (1) whether the record supported a finding that a fraudulent transfer occurred and (2) whether the relief given by the district court was appropriate. In our de novo review of the record in this equity action, we consider together the parties' arguments regarding each of these issues. As explained below, we conclude that, although the record supported the district court's implicit finding that a fraudulent transfer occurred, the monetary judgment awarded by the district court was not appropriate relief under the UFTA in this case.

*The Record Supports the Court's Implicit*
*Finding That Under the UFTA, There*
*Was a Fraudulent Transfer.*

We initially address JMH's claim that the district court erred when it failed to specifically find that a fraudulent transfer

- 718 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
296 NEBRASKA REPORTS
JANICE M. HINRICHSEN, INC. v. MESSERSMITH VENTURES
Cite as 296 Neb. 712

occurred under the UFTA. We agree that, although the court entered a monetary judgment in favor of JMH, it did not explicitly state in its journal entry that it found RAM's transfer of assets to Messersmith Ventures was a fraudulent transfer. However, because JMH brought its action under the UFTA, and because relief under the UFTA generally requires a finding that a fraudulent transfer occurred as a predicate to relief, we read the district court's findings and its entry of a monetary judgment in favor of JMH as an implicit finding that a fraudulent transfer occurred.

In the absence of a claim that JMH made a request for specific findings under Neb. Rev. Stat. § 25-1127 (Reissue 2016), we believe the district court's narrative of its findings was adequate. Further, we note that regardless of whether the district court made an explicit or an implicit finding that a fraudulent transfer had occurred, on appeal, we review the question de novo on the record and reach a conclusion independent of the finding of the district court. Therefore, in our appellate analysis, we consider whether the record supports a finding that a fraudulent transfer occurred.

Sections 36-705 and 36-706 describe various types of transfers that would be considered fraudulent for purposes of the UFTA. JMH contends that RAM's transfer of the assets at issue in this case to Messersmith Ventures was fraudulent, because the debt arose before the transfer was made, no reasonably equivalent value was received in exchange for the transfer, and RAM was insolvent at the time of the transfer. JMH's argument appears to be based on § 36-706(a) which provides in relevant part as follows:

> A transfer made . . . by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made . . . if the debtor made the transfer . . . without receiving a reasonably equivalent value in exchange for the transfer . . . and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer . . . .

- 719 -

Nebraska Supreme Court Advance Sheets
296 Nebraska Reports
JANICE M. HINRICHSEN, INC. v. MESSERSMITH VENTURES
Cite as 296 Neb. 712

Messersmith Ventures does not appear to dispute that RAM's debt to JMH reflected in the judgment against RAM in case No. C112-88, arose before the transfer at issue, nor does it appear to dispute that RAM was insolvent at the time of the transfer or became insolvent as a result of the transfer. Instead, Messersmith Ventures claims that JMH failed to prove a fraudulent transfer of assets had occurred for two reasons: (1) neither the customer lists nor the agency contacts transferred were "assets" within the meaning of the UFTA, because at all relevant times, they were subject to a valid lien of another creditor, and (2) even if a transfer of assets occurred, JMH failed to show that the transfer was not for a reasonably equivalent value, because there was no evidence the assets were worth more than the $250 that Messersmith Ventures paid to RAM.

Regarding Messersmith Ventures' first argument, the word "asset" is defined in § 36-702(2) of the UFTA as follows: "Asset means property of a debtor, but the term does not include[, inter alia,] property to the extent it is encumbered by a valid lien." Messersmith Ventures argues that the evidence shows that RAM's assets, including the customer lists and agency contracts, were encumbered by a bank's security interest which operated as a valid lien against RAM's assets "in the amount of at least $22,750.00." Brief for appellee on cross-appeal at 12. Messersmith Ventures contends that because the assets transferred to it by RAM were worth no more than the $250 it paid to RAM, the transferred assets were fully encumbered by the bank's lien and therefore not "assets" within the meaning of the UFTA. See § 36-702(2).

Messersmith Ventures alternatively argues that JMH did not prove that the transfer was made "without receiving a reasonably equivalent value in exchange for the transfer" as required for a fraudulent transfer under § 36-706(a). Messersmith Ventures asserts that the district court found that JMH had not proved that the transferred assets were worth anything more than the $250 that Messersmith Ventures paid to RAM

- 720 -

Nebraska Supreme Court Advance Sheets
296 Nebraska Reports
JANICE M. HINRICHSEN, INC. v. MESSERSMITH VENTURES
Cite as 296 Neb. 712

and that therefore, in the language of § 36-706(a), RAM had received "a reasonably equivalent value" in exchange for the transfer.

Both of these arguments are premised on Messersmith Ventures' assertion that JMH did not present evidence to prove that the assets transferred to it by RAM were worth anything more than the $250 as found by the court. But, based on our de novo review of the record, we disagree with the court's determination that the assets transferred were worth no more than $250.

Having reviewed the record, we recognize that JMH did not establish the specific value of the assets RAM transferred to Messersmith Ventures in October 2013. However, it was not required to do so to support its contention that the $250 was not a reasonably equivalent value compared to the assets received. The evidence shows that in January 2011, JMH sold 90 percent of its assets to RAM for $108,870; that in July 2012, the district court entered judgment in favor of JMH and against RAM in case No. C112-88 in the amount of $98,606.94; and that in October 2013, RAM transferred its customer lists and agency contracts to Messersmith Ventures for $250.

The record supports JMH's assertion that the $108,870 which RAM paid JMH in 2011 included 90 percent of the book of insurance business and good will of the Platte Valley Insurance Agency, as well as furniture, fixtures, and equipment. The purchase included the carrier and customer contracts, and as JHM notes, "RAM utilized these contracts and was paid commissions of $83,311 in 2012 . . . and $47,220.00 in 2013." Brief for appellant at 12.

It is reasonable to infer from such evidence that the assets RAM transferred to Messersmith Ventures in October 2013 were basically the book of insurance business that RAM purchased from JMH in January 2011 at a price in excess of $100,000. It is further reasonable to infer that the worth of such assets in October 2013 was considerably closer to the $98,606.94 judgment, rather than the $250 that Messersmith

Ventures paid to RAM. Therefore, although JMH did not prove a specific value for the transferred assets, the evidence was sufficient to find both that RAM transferred the assets "without receiving a reasonably equivalent value in exchange for the transfer," under § 36-706(a), and that the transferred assets were not entirely encumbered by the bank's security interest.

Based on this and other evidence noted in our de novo review of the record, we conclude that the district court did not err when it implicitly found that a fraudulent transfer had occurred. Having determined that a fraudulent transfer occurred, we next consider whether the district court awarded appropriate relief under the UFTA.

*Based on the Nature of the Fraudulent Transfer in This Case, a Monetary Judgment of $250 Was Not Appropriate Relief; the Court Instead Should Have Ordered That JMH May Levy Execution on the Assets That Were Transferred to Messersmith Ventures or the Proceeds of Such Assets.*

Both parties claim on appeal that the district court erred when it awarded a monetary judgment in the amount of $250. Messersmith Ventures claims that the judgment was in error, because JMH did not prove a fraudulent transfer and, therefore, should not have been awarded any relief, whereas JMH claims that it was entitled to relief, but that the money judgment in the amount of $250 was not the appropriate relief. We concluded above that JMH proved a fraudulent transfer, and we therefore reject Messersmith Ventures' argument that JMH should not have been awarded any relief. We further conclude that, applying the UFTA, the district court's judgment in favor of JMH in the amount of $250 was not appropriate relief under the facts of this case.

As an initial matter with respect to the appropriate form of relief, we comment briefly on JMH's argument that it was entitled to a "charging order." We believe JMH is contemplating

- 722 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
296 NEBRASKA REPORTS
JANICE M. HINRICHSEN, INC. v. MESSERSMITH VENTURES
Cite as 296 Neb. 712

a provision in the Nebraska Uniform Limited Liability Company Act, Neb. Rev. Stat. § 21-142(a) (Reissue 2012), which provides:

On application by a judgment creditor of a member or transferee, a court may enter a charging order against the transferable interest of the judgment debtor for the unsatisfied amount of the judgment. A charging order constitutes a lien on a judgment debtor's transferable interest and requires the limited liability company to pay over to the person to which the charging order was issued any distribution that would otherwise be paid to the judgment debtor.

Section 21-142(a) is similar to the limited liability company laws adopted in other states. The Florida equivalent of Nebraska's § 21-142(a) has been explained as follows: "A charging order issued under this provision acts as a lien on the member's interest in the limited liability company and grants the judgment creditor the right to receive distributions from the company which the member would have otherwise been entitled to receive." *Wells Fargo Bank, N.A. v. Barber*, 85 F. Supp. 3d 1308, 1313 (M.D. Fla. 2015). The court in *Barber* continued: "Generally, 'a charging order is the sole and exclusive remedy by which a judgment creditor . . . may satisfy a judgment' from a member's interest in a limited liability company or distributions therefrom." *Id*. See, similarly, § 21-142(g).

In *Barber*, plaintiffs alleged four counts and sought relief under the Florida Limited Liability Company Act and the Florida Uniform Fraudulent Transfer Act. Therefore, the federal district court considered both statutes. In contrast, the instant case has been tried under the UFTA, and accordingly, we restrict our consideration of the appropriate relief to the UFTA's remedies. Remedies under the UFTA are directed at the assets that were transferred; in this case, no membership interests were transferred. A charging order is directed at reaching a debtor's membership interest and is therefore

- 723 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
296 NEBRASKA REPORTS
JANICE M. HINRICHSEN, INC. v. MESSERSMITH VENTURES
Cite as 296 Neb. 712

not applicable to the assets transferred in this case. Compare, § 36-708 (pertaining to remedies) with § 21-142(a) (pertaining to charging orders in connection with limited liability companies), and Neb. Rev. Stat. § 67-430 (Reissue 2009) (pertaining to charging orders in connection with partnerships).

Section 36-708 of the UFTA is entitled "Remedies of creditors," and § 36-709 of the UFTA is entitled "Defenses, liability, and protection of transferee." Both sections relate to remedies. Subsection (a) of § 36-708 sets forth remedies including, inter alia, avoidance of the transfer, attachment against the asset transferred, and "any other relief the circumstances may require." The district court's award of a monetary judgment set at the amount of $250 appears to be either "other relief" under § 36-708(a)(3)(iii) or relief in the form of avoidance of the transfer, which pursuant to § 36-709(b) may be accomplished by a "judgment for the value of the asset transferred." However, as we discussed above, the evidence in this case indicates that the value of the asset transferred was significantly more than the $250 that Messersmith Ventures paid to RAM.

We have considered the record de novo in this equitable case. We determine instead of the relief directed by the district court, the more appropriate relief in this case is that set forth in § 36-708(b) which provides that "[i]f a creditor has obtained a judgment on a claim against the debtor, the creditor, if the court so orders, may levy execution on the asset transferred or its proceeds." In this case, JMH is the creditor who had obtained a $98,606.94 judgment on a claim against RAM in case No. C112-88. Given the fraudulent transfer and the equities involved, the court in this case should order, pursuant to § 36-708(b), that JMH may levy execution on the assets or the proceeds of the assets that RAM transferred to Messersmith Ventures. This remedy allows JMH to levy execution on the assets transferred to Messersmith Ventures or their continuing proceeds in order to satisfy JMH's judgment against RAM. This remedy is more equitable than the specific monetary

judgment awarded by the district court because it allows JMH to execute on the assets or the proceeds of such assets in the hands of Messersmith Ventures to the extent of their productive value and JMH's judgment against RAM, rather than limiting JMH's recovery to $250.

## CONCLUSION

Based on our de novo review of the record, we conclude that the district court did not err when it implicitly found that RAM's transfer of assets to Messersmith Ventures was a fraudulent transfer. We affirm this part of the court's order. However, we conclude that the district court's award of a monetary judgment of $250 in favor of JMH was not appropriate relief in this case and that instead, the court should have ordered, pursuant to § 36-708(b), that JMH may levy execution of its judgment against RAM on the assets or the proceeds of the assets that RAM transferred to Messersmith Ventures. We reverse the district court's monetary judgment of $250, and we remand the cause with directions to the district court to order the appropriate relief in accordance with this opinion.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.

CASSEL, J., concurring.

The court's opinion, which I join in full, mandates relief under Neb. Rev. Stat. § 36-708(b) (Reissue 2016). This statute authorizes the trial court to order that the judgment creditor "may levy execution on the asset transferred or its proceeds."[1] Thus, this court says, the trial court should have ordered that the creditor "may levy execution of its judgment against [the transferee] on the assets or the proceeds of the assets." On remand, the trial court undoubtedly will do so.

But, in this case, the transferred assets are intangible. Our execution statute makes only "[l]ands, tenements, goods and

---

[1] § 36-708(b).

- 725 -

Nebraska Supreme Court Advance Sheets
296 Nebraska Reports
JANICE M. HINRICHSEN, INC. v. MESSERSMITH VENTURES
Cite as 296 Neb. 712

chattels, not exempt by law, . . . liable to be taken on execution and sold . . . ."[2] This may prompt some confusion on how our mandate is to be carried out. It may be that an officer to whom a writ of execution is directed regarding intangible assets may find it outside of his or her experience. But the means of carrying out our mandate is a matter that in the first instance, must be addressed in the court below.

Equitable principles should guide the parties and the trial court. A claim to set aside fraudulent conveyances is an action in equity.[3] Where a situation exists which is contrary to the principles of equity and which can be redressed within the scope of judicial action, a court of equity will devise a remedy to meet the situation.[4] Where relief may be granted, although no precedent may be found, the court will so proceed.[5]

---

[2] Neb. Rev. Stat. § 25-1503 (Reissue 2016).

[3] *Bowers v. Dougherty*, 260 Neb. 74, 615 N.W.2d 449 (2000).

[4] *O'Connor v. Kearny Junction*, 295 Neb. 981, ___ N.W.2d ___ (2017).

[5] *Trieweiler v. Sears*, 268 Neb. 952, 689 N.W.2d 807 (2004).